**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| UNITED STATES OF AMERICA | No. 3:20-cr-00086 (KAD) |
|---|---|
| v. | |
| PAUL PROSANO | September 10, 2020 |

**MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION TO SEVER (ECF NO. 61)**

Kari A. Dooley, United States District Judge:

Paul Prosano ("Prosano" or the "Defendant") stands charged with aiding and abetting Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951 and 2 and interstate transportation of stolen property in violation of 18 U.S.C. § 2314.  (*See* Superseding Indictment, ECF No. 11.)  The charges arise from the robbery of Marco Jewelers on March 28, 2020 in Stamford, Connecticut, which was allegedly committed by Prosano's co-defendants, Robert Rallo ("Rallo") and Thomas Liberatore ("Liberatore"), and for which Prosano allegedly served as the getaway driver.  Rallo and Liberatore also face charges for committing and aiding and abetting murder by use of a firearm during the Hobbs Act Robbery, in violation of 18 U.S.C. §§ 924(j)(1) and 2, for their alleged roles in causing the death of the owner of Marco Jewelers, Mark Vuono ("Vuono").  Prosano filed the instant motion to sever his criminal case from that of his co-defendants, citing Federal Rules of Criminal Procedure 2, 8(b), and 14(a) and the Fifth and Sixth Amendments to the United States Constitution.  (ECF No. 61.)  The Government opposes severance and filed a brief in opposition to the motion.  (ECF No. 63.)  For the following reasons, the Defendant's motion is DENIED without prejudice.

1

**Background**

According to the Master Affidavit submitted by Special Agent Andrew M. Pappas in support of the Government's initial criminal complaint,[1] Stamford Police Officers responded to Marco Jewelers in Stamford, Connecticut on the afternoon of March 28, 2020 at 2:48 P.M., where they discovered evidence of a robbery and found Vuono on the ground in front of an open safe with a large pool of blood under his head.  (Pappas Aff. ¶ 12, ECF No. 1-1.)  Vuono was pronounced dead soon thereafter.  (*Id.*)  Closed Circuit Television ("CCTV") footage from a Dairy Queen located less than a mile away revealed two individuals putting on surgical masks and changing clothes outside of a black Jaguar between 1:15 and 1:30 P.M. that day.  (*Id.* ¶ 13.)  A third individual, identified as the getaway driver, remained in the vehicle.  (*Id.*)  CCTV footage also depicted the getaway driver purchasing provisions from a nearby convenience store around 1:04 P.M.  (*Id.*)  Surveillance video from Marco Jewelers showed the first two individuals, identified as Subject #1 and Subject #2, entering the jewelry store at 2:08 P.M.  (*Id.* ¶ 15.)  Subject #1 brandished a black semi-automatic handgun and became engaged in a physical altercation with Vuono, who was alone in the store, while Subject #2 stole items from display cases.  (*Id.*)  Vuono wielded his own silver revolver and continued to fight with Subject #1 until the latter eventually retrieved a third firearm that appeared to be a black revolver from a large open safe, which he used to shoot Vuono in the head.  (*Id.*)  Separate CCTV footage from a nearby corporate park depicted Subject #2 entering the black Jaguar at 2:11 P.M. with the getaway driver, identified as Subject #3.  (*Id.* ¶ 16.)  The black Jaguar left the CCTV's area of coverage and returned to Marco Jewelers

---

[1] The Government offers a very detailed proffer as to its evidence and what it believes the evidence will establish at trial. For purposes of this motion, the Court cites only to the events detailed in the Master Affidavit, as they are sufficient to inform the Court's analysis.

approximately five minutes later, at which point Subject #1 entered the Jaguar and the vehicle fled with all three men inside.  (*Id*.)

Law enforcement later located the black Jaguar in Staten Island, New York and began to conduct surveillance on the vehicle.  (*Id*. ¶ 18.)  On March 30, 2020 at approximately 5:30 P.M., a black BMW X3 was observed pulling up alongside the black Jaguar.  (*Id*. ¶ 19.)  An individual later identified as Rallo exited the vehicle and entered the driver's seat of the Jaguar, while an individual later identified as Prosano remained in the driver's seat of the BMW X3.  (*Id*. ¶¶ 19– 20.)  Federal agents followed both vehicles as they began to speed away; Prosano's wife, who had been seated in the front passenger seat of the BMW X3, allegedly jumped out of the vehicle with her dog before both cars crashed, separately, and Rallo and Prosano were allegedly apprehended while attempting to flee on foot.  (*Id*. ¶¶ 21–23.)  Prosano is alleged to match the description and video footage of the getaway driver, *i.e.*, Subject #3.  (*Id*. ¶ 24.)  According to Special Agent Pappas, a subsequent search of the BMW X3, which was registered to Prosano's wife, revealed 63 rings, eight bracelets, one earring, a cufflink, and two tie pins that were identified as stolen from Marco Jewelers.  (*Id*. ¶ 25.)  A search of Prosano's house in Brooklyn, New York is also alleged to have led to the discovery of 23 pairs of earrings and three rings inside of an armoire that were identified as stolen from the jewelry store.  (*Id*. ¶¶ 26–27.)

Liberatore was also arrested on the night of March 30, 2020.  (*Id*. ¶ 30.)  He faces additional criminal charges of Hobbs Act Robbery, possessing and brandishing a firearm during a crime of violence, and interstate transportation of a stolen vehicle arising out of the robbery of Byram Jewelers in Greenwich, Connecticut on March 18, 2020.  (*See* Indictment, United States v. Liberatore, Case No. 3:20-cr-00087-KAD, ECF No 1 (D. Conn. June 3, 2020); Pappas Aff. ¶¶ 7– 11.)  The Government filed a notice of intent to present evidence of Liberatore's involvement in this robbery in the instant case "to prove motive, opportunity, intent, preparation, common plan,

knowledge and identity" pursuant to Federal Rule of Evidence 404(b) (*see* ECF No. 31 at 2), to which Liberatore objected.  (*See* ECF No. 32.)

**Legal Standard**

Federal Rule of Criminal Procedure 8(b) provides in relevant part that two or more defendants may be charged in the same indictment or information "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  However "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

"The Supreme Court has instructed that 'the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear.'"  *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008) (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).  "Such prejudice exists, the Court explained, only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'"  *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).  "Differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials," and "[e]ven 'joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.'"  *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (quoting *United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir. 1983), and *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993)) (brackets omitted).  "The defendant seeking a severance must shoulder the difficult burden of showing that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials."  *United States v.*

*Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986) (quoting *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984)).

> Among the factors to be weighed to determine prejudice are (1) the number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others.

*United States v. Moody*, 660 F. Supp. 2d 340, 343 (D. Conn. 2009) (quoting *United States v. Ramos*, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004)).  No factor is dispositive.  *See id*.  For example, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *Rittweger*, 524 F.3d at 179 (quoting *Carson*, 702 F.2d at 367). Ultimately, the question of whether to order a severance under Rule 14 is one that is committed "to the district court's sound discretion." *Moody*, 660 F. Supp. 2d at 343 (quoting *Zafiro*, 506 U.S. at 539).

**Discussion**

Prosano does not contend that the joinder of the three defendants was improper under Rule 8(b).  Accordingly, the only question for the Court is whether severance is required, that is, whether Prosano has established a sufficiently high likelihood of prejudice arising from a joint trial so as to "compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Rittweger*, 524 F.3d at 179 (quotation marks omitted).  In this vein, Prosano advances three distinct arguments.  First, he asserts that because the charges that arise from Vuono's alleged murder may render Rallo and Liberatore eligible for the death penalty while Prosano's charges do not subject him to the same, Prosano's speedy trial rights will be prejudiced due to the delay that he will face while the Department of Justice undertakes its capital punishment review process.  Second, he asserts that if the death penalty is ultimately sought, he will be prejudiced by having to be tried before a death-qualified jury.  And third, he contends that the

evidence presented at trial regarding the alleged murder will generate a prejudicial spillover that will infect the jury's ability to weigh the individual evidence and charges against him.  These arguments are addressed in turn.

First, Prosano argues that his trial will be delayed by many months while the Department of Justice determines whether to pursue the death penalty against his co-defendants.  The Speedy Trial Act provides in relevant part that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).  The statute excludes from this time "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  *Id.* § 3161(h)(6); *see also United States v. Pena*, 793 F.2d 486, 489–90 (2d Cir. 1986) ("Congress clearly intended that, where appropriate, joint trials of defendants should continue to be available as a means of promoting judicial efficiency by avoiding duplicative proof at successive trials. It thus intended that reasonable speedy trial time be excludable under Section 3161(h)[(6)] when necessary to enable joint trials to go forward.").  This Court has already determined that a continuance is warranted pursuant to Section 3161(h)(7)(A) due to, *inter alia*, the time that is needed to comply with the Department of Justice's protocols for cases that are death penalty eligible and has thus excluded the period from July 21, 2020 to September 7, 2021 from the speedy trial period.  (*See* ECF No. 55.)  The question, therefore, is whether that period is "reasonable" within the meaning of the statute.  *See United States v. Vasquez*, 918 F.2d 329, 337 (2d Cir. 1990) ("If a defendant makes a motion for severance that is denied, he is then entitled to the benefit of the reasonableness limitation on delays affecting co-defendants").

Some courts have observed that "[t]he 'starting point' for the Court's reasonableness analysis 'is to determine what the speedy trial deadline' for [the defendant] 'would have been had he not been indicted jointly with his codefendants, and then to assess whether any delay beyond that deadline is reasonable.'" *United States v. Contreras*, 216 F. Supp. 3d 299, 306 (W.D.N.Y. 2016) (quoting *United States v. Van Sichem*, No. SS 89 CR. 813 (KMW), 1990 WL 41746, at *1 (S.D.N.Y. Apr. 2, 1990) (brackets omitted)).  Here, Prosano cannot establish as a threshold matter that his trial will necessarily be delayed as a result of joinder with his-co-defendants beyond the delay that he will face were he to be tried separately.  The Court's continuance to September 7, 2021 was based not only on the need to enable counsel for Rallo and Liberatore to prepare their mitigation defenses for review by the Department of Justice, but also "on the basis of the representations of counsel for the government regarding the volume and nature of the discovery." (ECF No. 55.)  This is a consideration that applies to Prosano as well as to his co-defendants, and indeed, Prosano consented to the continuance of his trial date to enable him to review the voluminous discovery in this matter.  Thus, at this juncture, his speedy trial argument is unripe.[2]

Second, Prosano asserts that if the death penalty is ultimately sought against his co-defendants, he will suffer prejudice by facing trial before a "death qualified jury," *i.e.*, a jury that excludes prospective jurors whose opposition to the death penalty would impede their ability to fulfill their duties as jurors.  *See, e.g.*, *United States v. Fell*, 224 F. Supp. 3d 327, 331–32 (D. Vt. 2016) (explaining the evolution of the legal standard for death qualification during jury selection). There is precedent for "sever[ing] death-eligible defendants from non-capital defendants on the

---

[2] In addition, as the Government notes in its opposition, no criminal trials have taken place in this District since March of 2020 due to the ongoing public health crisis, and jury selection in criminal cases is suspended through November 2, 2020 pursuant to Chief Judge Underhill's COVID-19 General Order Re: Jury Selections & Trials dated July 14, 2020.  The inevitable delays occasioned by the growing backlog of cases awaiting trial and the fact that Chief Judge Underhill's Order directs that priority be given to defendants who have been detained the longest render it even less likely that Prosano would face a shorter delay were he to be tried separately from his co-defendants, given the nascency of his case relative to other pending criminal cases.

grounds, *inter alia,* that only the capital defendants were charged with murder and that the jury would be death-qualified." *United States v. Minaya*, 395 F. Supp. 2d 28, 40–41 (S.D.N.Y. 2005) (citing cases); *but see United States v. Heatley*, No. S11 96 CR. 515 (SS), 1998 WL 671462, at *2 (S.D.N.Y. Sept. 29, 1998) ("The Court can see no reason why there is inherent prejudice to noncapital defendants in being tried with capital ones").  However, the Court need not speculate as to the potential prejudice Prosano might face if tried before a death qualified jury because the Government has not yet decided whether to seek the death penalty against Prosano's co-defendants. This argument is therefore also premature.  *See Minaya*, 395 F. Supp. 2d at 41 ("[G]iven that the Government may still decide not to seek the death penalty against any of the defendants in this case and that trial is not scheduled to commence for almost one year, the Court declines to order severance at this time on the basis of the death-eligibility of certain defendants"); *see also*, *e.g.*, *United States v. Jackson*, No. 04-CR-801 (PKC), 2006 WL 59559, at *4 (S.D.N.Y. Jan. 9, 2006) (observing that the court would entertain a motion to sever if and when the Government signaled its intent to pursue capital punishment).  If the Government ultimately decides to bring capital charges against Rallo and Liberatore, Prosano may file a renewed severance motion at that time.

Finally, Prosano asserts that the jury will be prejudiced by the testimony and photographic evidence related to Vuono's alleged murder, were he to be tried jointly with Rallo and Liberatore. He argues that it will be difficult if not impossible for the jury to deliver an impartial verdict regarding Prosano's charges of robbery and transporting stolen property when faced with the disturbing and graphic evidence upon which the Government intends to prove the murder charges against Prosano's co-defendants.  The Government responds that the majority of the evidence it intends to present at trial would be admissible at a separate trial of Prosano, as Prosano was present with his co-defendants throughout the day, both in preparing for the robbery and in fleeing from

the robbery scene, and further that he is alleged to have shared in the robbery's proceeds.  (*See* Gov't Br. at 11.)  The Court agrees with the Government that simply because Prosano is not alleged to have been physically present in the jewelry store does not eliminate the jury's need to see the evidence of the robbery that Prosano is charged with aiding and abetting, to include evidence of the use or threatened use of force.  In this case, the allegations include that the force used ultimately led to the murder of the store owner.  Moreover, even if some portion of the evidence relating to Vuono's alleged murder would not be admissible against Prosano, as discussed above, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance."  *Rittweger*, 524 F.3d at 179 (quoting *Carson*, 702 F.2d at 367).

Moreover, because "[l]imiting instructions and jury charges instructing the jury to 'assess the evidence against each defendant separately from the evidence presented against other defendants' are usually sufficient to mitigate any potential prejudicial spillover,'" *Moody*, 660 F. Supp. 2d at 345 n.4 (quoting *United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999)), the Court is not persuaded, that if instructed to disregard certain evidence when considering the individual charges against Prosano, the jury would be unable or unwilling to follow such an instruction.  *See also, e.g.*, *United States v. DeVillio*, 983 F.2d 1185, 1192–93 (2d Cir. 1993) (upholding denial of severance motion where district court instructed jury that certain testimony regarding attempted murder of a government informant by co-defendants could not be used as evidence against defendants who were not charged with the attempted murder); *United States v. Guzman*, No. 11-CR-1015 (LTS), 2013 WL 3305308, at *4 (S.D.N.Y. July 1, 2013) (concluding, in case where defendant Guzman was alleged to have jointly planned robbery in which violence was foreseeable but was not present for the robbery victim's beating and ultimate death, that "even if the introduction of evidence of the robbery victim's death at a joint trial would subject Guzman to some 'spillover prejudice,' any such prejudice could be remedied through an appropriate limiting

9

instruction to the jury").  For similar reasons, Prosano's contention that he will be prejudiced by the Government's introduction of evidence concerning Liberatore's alleged robbery of Byram Jewelers to show a pattern or practice on behalf of Prosano's co-defendant is not one that supports the need for severance when these concerns can appropriately be addressed through a motion *in limine* or curative/limiting instruction.[3]  In sum, it does not appear to the Court that Prosano will be subject to such "spillover prejudice" from evidence regarding the alleged murder so as to warrant severance.  *See, e.g.*, *United States v. Liburd*, No. 17-CR-296 (PKC), 2019 WL 319392, at *7 (E.D.N.Y. Jan. 24, 2019) (declining to find that prejudicial spillover warranted severance where defendant was alleged to be a member of a racketeering enterprise and, while not charged with racketeering himself, would be tried alongside co-defendant members who were charged with murder and murder conspiracy).

Finally, as noted above, when considering potential prejudice courts in this Circuit examine not only whether certain evidence would be admissible against the defendant but also the number of defendants and charges, the indictment's complexity, the estimated trial length, disparities in the extent to which the various defendants were involved in the overall criminal scheme, and potential conflicts between defense theories.  *Moody*, 660 F. Supp.2d at 343.  Here, even assuming *arguendo* that some of the evidence concerning the alleged murder would not be admissible against Prosano, these other factors do not counsel in favor of severance. Although the evidence is apparently voluminous, this is a fairly straightforward case involving only three defendants and three charges.  The indictment does not reveal a particularly high level of complexity such that jurors are likely to become confused in attempting to sort and analyze the evidence.  *See Liburd*,

---

[3] The Government also represents that evidence of Liberatore's earlier robbery is probative of Prosano's knowledge and involvement in the robbery of Marco Jewelers, as Prosano allegedly conducted a search of the Byram Jewelers robbery on his cell phone on March 19, 2020.  (*See* Gov't's Br. at 14–15.)  The Court expresses no view on the ultimate admissibility of such evidence for this purpose.

2019 WL 319392, at *7 ("Because the substantive charges against Liburd relate to a single robbery, the evidence relating to his charges will be easily separated and distinguished from the evidence against the other defendants at trial, and so the jury will be able to 'consider it without any significant spillover effect'") (quoting *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988)).  It is also not apparent, at this stage, that the defendants intend to raise conflicting defense theories so as to warrant severance on this basis.  The fact that the Government intends to present evidence that all three co-defendants were involved in the planning and commission of the robbery at issue and that all three defendants shared in the proceeds of the robbery also favors a joint trial of all three defendants.

Lastly, the Court addresses Prosano's misplaced reliance on *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994).  There, the Second Circuit held that the district court abused its discretion when it failed to sever from an indictment one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) from other counts of armed bank robbery due to the prejudice that arose from the introduction of the defendant's prior conviction at trial.  *See id*. at 492–93.  The district court instructed the jury not to consider the defendant's prior felony conviction for any purpose other than to determine whether the Government had proven that he was a felon in possession of a firearm, but "repeated seven times" that the defendant "had a prior felony conviction."  *Id*. at 490.  In identifying prejudice to the defendant arising from the joinder of the counts, the Second Circuit focused on the fact that the prosecution "added the felon in possession charge only after the first trial on the bank robbery charges ended with a hung jury, split ten to two for acquittal," and where "[n]o new facts supported the belated addition of the charge."  *Id*. at 492. "The ineluctable conclusion," according to the court, was "that the government added the count solely to buttress its case on the other counts."  *Id*.  The appellate court's determination that the felon in possession count should have been severed from the other counts was compounded by its

11

conclusion that there was insufficient evidence for the jury to convict the defendant of being a felon in possession; thus the court held that the bank robbery charges were "retroactively misjoined" with the felon in possession charge.  *Id.* at 493.  Subsequently, the Second Circuit declined to espouse a categorical rule that felon in possession charges must always be severed from other counts, distinguishing *Jones* on the basis of its "unique circumstances," including that "the government included the firearm count for an[] improper motive."  *See United States v. Page*, 657 F.3d 126, 132 (2d Cir. 2011).  Here, the nature of the potential prejudice Prosano identifies is far too conjectural to evoke the circumstances presented in *Jones*, and there is no evidence or even claim that the Government has joined the Section 924(j)(1) count against Prosano's co-defendants for any improper purpose.

**Conclusion**

For the foregoing reasons, the motion to sever is denied without prejudice should future events give reason to revisit the issue.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of September 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE